1
2
3
4
5
6
7
8
9    UNITED STATES DISTRICT COURT
10   EASTERN DISTRICT OF CALIFORNIA
11

| | | |
|---|---|---|
| GLOBAL AMPERSAND, LLC, | ) | 1:07-CV-01692 OWN GSA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER GRANTING PLAINTIFF'S |
| | ) | MOTION TO COMPEL IN PART |
| CROWN ENGINEERING AND | ) | |
| CONSTRUCTION, INC., | ) | (Doc. 76) |
| | ) | |
| Defendants. | ) | |
| | ) | |
| AND RELATED CROSS-CLAIM. | ) | |

**I.  Introduction**

On July 30, 2009, Global Ampersand, LLC ("Plaintiff" or "Global") filed the instant Motion to Compel and an Ex Parte Application to Shorten Time to Hear the Motion.  (Docs. 72, 74, and 76).  The Court granted the Plaintiff's Ex Parte Application and the hearing was scheduled for August 21, 2009.  (Doc.  93).  The Court ordered that any opposition to the motion

1

must be filed by August 17, 2009.  No opposition to the motion was filed.

On August 19, 2009, Global filed a Supplemental Brief.  (Docs. 95 and 96).  On August 20, 2009, Global also filed a Declaration and an Amended Declaration of Ethan Ostroff in Lieu of a Joint Statement.  (Docs. 97 and 98).

On August 21, 2009, a hearing on Plaintiff's Motion was held.  Ethan Ostroff appeared telephonically and Amanda Hebesha appeared personally on behalf of Plaintiff.  Michael Peters appeared telephonically on behalf of Crown Engineering and Construction ("Defendant" or "Crown").  At the conclusion of the hearing, the Court ordered that the parties file a Joint Statement to further clarify the requests in the Motion to Compel and to provide the Court with updated information.  The parties filed a Joint Statement on August 26, 2009. (Docs. 104-109). A further hearing was scheduled for September 11, 2009.

Upon consideration of the hearing held on August 21, 2009, as well as a review of all of the pleadings listed above, the Court determined that this matter was suitable for decision without additional oral argument pursuant to Local Rule 78-230 (h).  Plaintiff's Motion to Compel is GRANTED IN PART.  Plaintiff shall be awarded attorneys' fees in the amount of $17,375.00.

## II.  Background

The dispute between Global and Crown centers around two (2) simultaneously occurring construction projects involving the refurbishment of power generation facilities (hereinafter collectively referred to as the "the Projects").  The Projects at issue in this litigation are located in Madera County (the "Chowchilla facility") and Merced County (the "El Nido facility").  The two facilities had lain dormant for roughly fifteen years when Global began the process of refurbishing the structures and bringing them online to be connected to the power grid.  In early April 2007, Global hired Crown as the General Contractor on the Projects and the parties entered into a contract.  Disputes between the parties arose regarding the Projects' schedule, billing, and the workmanship.  As a result, completion of the Projects was delayed.  Crown stopped working

1  on the Project on October 30, 2007.  On October 31, 2007, Global alleged that Crown breached

2  the contract.  On November 6, 2007, Crown filed a Mechanics Lien on the El Nido facility.

3  Global subsequently terminated Crown and hired a different general contractor to finish the

4  Projects.  This litigation ensued.

5      On November 21, 2007, Global filed a Complaint alleging Breach of Contract, Fraud and

6  Negligence.  (Doc. 1).  On January 2, 2008, Crown filed a Cross-Complaint against Global

7  alleging the following causes of action : Breach of Contract; Work, Labor and Services/Agreed

8  Price; Work, Labor and Services/Reasonable Value; Foreclosure of the Mechanic's Lien; and

9  Enforcement of the Stop Notice.  (Doc. 6).  On January 16, 2009, Global filed an Amended

10  Complaint again alleging Breach of Contract, Fraud and Negligence.  (Doc. 31).

11      In the instant motion, Plaintiff seeks the following : 1)  to compel the responses to its

12  Request for Production of Documents Number 7 including an order requiring Crown to produce

13  all of its internal documents, including internal emails, all CDs, and other devices used to store

14  any documents or other data, etc., relating to the Projects; 2) an order compelling Crown to

15  explain what computer(s) used on the Project still exist, from which computer information was

16  downloaded for preservation, and from which computer(s) information was not downloaded and

17  preserved; 3) information regarding the protocol used to download information onto the recently

18  produced external hard-drive along with the instructions provided in determining what to

19  download and how to download this information; 4) sanctions against Crown for discovery

20  failures and abuses including, but not limited to, (a) terminating sanctions for spoliation and

21  entry of default judgment in favor of Global against Crown on all counts and dismissal of

22  Crown's Cross-Claims, or evidentiary sanctions to include an adverse evidentiary jury instruction

23  at trial, and (b) awarding Global its attorneys' fees and costs incurred as a result of these

24  discovery failures and abuses in the amount of $57,453.50.

25  ///

26  ///

27

28                                3

1

### III.  Discussion

2     *A.      Request for Production Number 7*

3        On October 20, 2008, Global served its First Set of  Requests for Production of

4   Documents which requested documents as follows : "All communications or documents

5   regarding the Project, the Contract, Global, or the Lawsuit since October 1, 2007." Joint

6   Statement, Exhibit B at pg. 10. (Doc. 76-3).[1]  On February 5, 2009, Crown served its Responses

7   to the Requests for Production of Documents.  Joint Statement, Exhibit C.  Crown objected to the

8   production of "electronic data" in its Responses and also objected on the grounds that the request

9   was compound, overbroad, and unduly burdensome.  Joint Statement, Exhibit C at pg. 7.  Crown

10  stated that the request was unduly burdensome because "it requests information already provided

11  in Crown's disclosures." Joint Statement, Exhibit C, at pg. 7.  Crown also stated this request for

12  documents "is broad enough to call for information protected by the attorney-client and attorney

13  work product privilege."  Joint Statement, Exhibit C, at pg. 7.

14        Global contends that no privilege log has ever been produced by Crown, nor has Crown

15

_____

16      [1] In paragraphs C and D of Global's Definitions incorporated into its Request for Production of Documents,
17  the term "document" was defined as follows :
        The term "Document" is used herein in the broadest sense permitted under the Federal Rules of Civil
18  Procedure.  In particular, it means the original (or identical duplicate when the original is not available) of all
    objects, tangible or intangible, from which information may be derived or discerned, and specifically includes all
19  form of Electronic Data and other information stored on Electronic Media.
        By way of example only, the term Document as used herein shall include, notes, correspondence,
20  memoranda, contracts, agreements, sound recordings, minutes, diaries, notebooks, bulletins, circulars, forms,
    statements, journals, letters, telegrams, notices, interoffice and intra office Communications, electronic mail,
21  photocopies, studies, analyses, messages, comparisons, graphs, charts, compilations, drawings, receipts, schedules,
    summaries, films, photographs, tapes Electronic Data, computer data bases, computer codes, computer printouts,
22  software, books, pamphlets, periodicals, reports, notations, messages, cables, videotapes, magazines, booklets,
    instructions, purchase orders, bills, checks, tabulations, questionnaires, surveys, sketches, working papers, indexes,
23  records of purchase of sale, contracts, agreements, leases invoices, expense records, trip reports, press releases,
    appraisals, valuations, estimates, opinions, financial statements, accounting records, income statements(including
24  consolidated income statements), electronic or other transcriptions or taping of telephone or personal conversations,
    conferences or meetings, telephone logs, appointment calendars, calendars, group scheduler calendars, paintings,
25  minutes, financial reports, accounting reports, facsimiles, facsimiles transmission reports, or logs, teletype messages,
    directories, computer directories, computer disks, computer tapes, computer media, or any other written, printed,
26  typed, punched, taped, filmed or other electronic media.

27

28                                                    4

raised privilege as a defense to this motion. Substantively, Crown responded to Global's Request for Production Number 7 by stating that it "has already produced all non-privilege and responsive documents within their (sic) possession, custody and control with its Disclosures.  The documents were produced as they are kept in the usual course of business and a table of contents is included in the Disclosures."  Joint Statement, Exhibit C, at pg. 7.

Plaintiff is seeking an ordering compelling a response to this request because Global alleges Crown has intentionally and steadfastly refused to produce key documents related to the litigation.

1.  Plaintiff's Position

Global claims that Crown repeatedly contended that it had either turned over documents responsive to this request as part of the initial or supplemental disclosures, or that the internal emails at issue did not exist.  However, the deposition testimony of Crown's owners and former employees is been clear that internal email was sent and received amongst Crown personnel with highly relevant information relating to Global's claims and defenses. Moreover,  Global alleges that since the filing of the Motion to Compel, Crown has produced the following:

a) an external hard-drive with thousands of emails not previously produced that contains e-mails of two former Crown employees: Dean Stumpf, Crown's Project Manager for the Projects; and Mandi Stanfi, Crown's Site Manager for the Project.  Global alleges that records have been deleted from this computer;

b) 1,500 pages of documents that had not previously been produced as evidenced by the lack of Bates Stamps.  These documents include an incomplete set of "daily calendars" from the Projects, which originally omitted the daily calendar for October 23, 2007, the day after a very important meeting between Global and Crown.  Global contends that Crown has now supplemented this calendar with an entirely blank page that it represents is a true and accurate copy;

 c) Crown's vendor payment and accounting records that do not appear to have been

previously produced to Global due to the absence of Bates numbering or other

identification. Global alleges this documentation contains information that contradicts

Crown's Cross Claims against Global;

d) a laptop computer used by Mr. Wilmer, Crown's Electrical Supervisor for the Projects.

This computer was just produced on August 26, 2009. During his deposition, Mr.

Wilmer indicated that he had given Crown the laptop approximately one month ago.

Global alleges that Crown previously indicated that Mr. Wilmer's laptop no longer

existed; and

e) Global alleges that to date, Crown has failed to produce a CD that Mr. Wilmer also

indicated contains key relevant documents and emails, which was created by Mr. Wilmer

at Crown's request about one (1) year ago. It appears this CD no longer exists.

Global argues that based on the above, Crown has failed to institute a litigation hold and

allowed the destruction of numerous relevant documents to be destroyed, including but not

limited to emails. As a result, Global requests that its Motion to be Compel be granted in its

entirety and that this Court award Global sanctions against Crown, including entry of default

judgment, dismissal of the Cross-Claim, and monetary sanctions as outlined above.

2. Defendant's Position

At the hearing held on August 21, 2009, Crown indicated that it did not file an opposition

to the Motion to Compel because it does not oppose the discovery request. Crown has never

objected to Global's numerous requests for production and it has complied with all of Global's

demands. It has provided Global with responsive documents and full access to Crown's offices,

including recently allowing Global full access to its computers and network server. Crown is

opposed to the imposition of sanctions for its alleged "discovery failures and abuses." When new

or previously unknown documents, hard-drives, or computers have been discovered by Crown,

Crown has produced them immediately.

It is apparent that Global believes Crown has been hiding documents throughout the

entire course of litigation, but Crown, its counsel, and its principles, contend that they have diligently provided the requested information to Global.  Crown contends that the 1,500 pages of additional documents it submitted were all previously provided to Global and that to date, Global can only point to one document not previously produced.  Further, Crown asserts that Mr. Wilmer's deposition testimony shows that Mr. Wilmer created the CD of emails without Crown's knowledge.  Crown states that it has searched it facilities and attempted to contact the office staff who Mr. Wilmer purportedly gave the CD to, but, to date, have been unsuccessful.

Crown further contends that Global has had access to all sources of information including direct access to Crown's email host server provider prior to bringing this motion; If Global had not delayed in acting on the offer, all of the source data and copies of the email server and computer hard drives would have already been in their possession.  Accordingly, sanctions are not warranted.  Finally, Crown specifically objects to Global's request for terminating sanctions and for entry of judgment and dismissal of Crown's Cross-Claim because the first time Global made this request was in the Joint Statement.  Crown should be entitled to proper notice and opportunity to be heard on that request.[2]

3.  Analysis

F.R.Civ.P. 26(b) establishes the scope of discovery and states in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

---

[2] At the end of the Joint Statement, Crown indicates that Global inserted new arguments into the Joint Statement and did not give Crown an opportunity to properly respond to the arguments.  Although it is not entirely clear, it appears that Crown is referencing the arguments made regarding the request for terminating sanctions that were not previously argued at the August 21, 2009 hearing.  As indicated below, the Court is deferring its ruling on the spoliation issue.  However, it appears that Global agreed to stipulate that Crown could have additional time to respond to the Joint Statement and Crown declined.  Further, Crown never filed a motion to supplement its responses in the Joint Statement.

"The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D 281, 283 (C.D. Cal. 1998); *Nestle Foods Corp. v. Aetna Casualty & Surety Co.*, 135 F.R.D. 101, 104 (D. N.J. 1990).

Fed. R. Civ. P. 34(b)(2)(B) requires parties answering requests for production of documents "either state that inspection and related activities will be permitted as requested or state an objection to the request including the reasons" in each response. Although Crown initially objected the Global's Request for Production of Documents based on attorney client privilege, it never produced a privilege log. In addition, although Crown states that it provided the requested information in its initial and supplemental disclosures, Global contends that Crown did not produce the internal emails at issue in any of Crown's disclosures.

Crown has submitted declarations from Bart Wood and Ted Tripp, co-owners of Crown, indicating that they conducted an extensive search for documents regarding the Project, and that they downloaded and copied all of the information on computers such as emails, schedules, time cards, unit man hour reports, projections cost overruns, and correspondences. *See*, Declaration of Bart Wood, dated August 23, 2009, and Declaration of Ted Tripp, dated August 25, 2009 attached as Exhibits A and B of "Exhibits in Support of Crown Engineering & Construction, Inc.'s Opposition to Global Ampersand, LLC's Request for Sanctions ("Defendant's Exhibits"). (Doc. 105). Mr. Wood and Mr. Tripp contend that all of this information was copied and 6,000 documents were turned over to their attorneys in response to discovery requests. However, other than these declarations, Crown has not submitted any evidence to refute Global's claims. *Id*. Similarly, the Court notes that Crown did not file an opposition to the Motion to Compel initially and has not provided the Court with any legal authority in support of its position in the Joint Statement.

The non-expert discovery cutoff in this case was July 20, 2009.[3]  Here, the Court finds that Crown did not timely disclose all responses to the Request for Production of Documents which necessitated the filing of the instant Motion to Compel.  It is not entirely clear whether any of the 1,500 pages of documents Crown has recently given to Global were previously produced.[4] However, it is uncontested that Crown produced an external hard-drive on July 29, 2009, containing files downloaded from the laptop computer of Dean Stumpf, the Project Manager. According to Mr. Wood at his deposition, this hard-drive was brought to him by Mr. Stumpf, and had been kept in a box with all of the file folders related to the Projects that Crown had been maintaining at its home office, but was never produced by Crown.  Joint Statement, Exhibit I, Deposition Transcript of Bart Wood, Tr. 253:7-256:6.  A review of the Outlook program of the external hard-drive reveals that it contains thousands of relevant emails including emails from Mr. Stumpf, Mandi Stanfil, the Office Manager, and Bart Wood regarding key aspects of this litigation.  Joint Statement, Exhibit M, Declaration of Eric Shumway dated August 26, 2009 at pgs. 1-7 .

Similarly, Crown failed to produce a CD that may contain key relevant documents and emails created approximately one (1) year ago by Mr. Wilmer.  Joint Statement, Exhibit L, Deposition Transcript of Brad Wilmer, Tr. 45:6-56:9.  It appears this CD either no longer exists or cannot be located by Crown.  Declaration of Bart Wood, dated August 23, 2009, Exhibits A of

---

[3]  On July 17, 2009, the discovery deadline was extended until August 31, 2009, so that additional depositions could be taken, however this amendment did not effect the written non-expert discovery deadline.  (Doc. 49).

[4]  Global alleges that there are at least two documents particularly relevant to this litigation that were only recently produced.  One of these is a document entitled "Credit Memo" in the amount of $494,623.72 from Crown to Global dated December 30, 2007.  The "Credit Memo" involves one of Crown's vendors, Trinity Controls, and the sum of $494,623.72 is part of Crown's Cross-Claim against Global.  Crown had taken the position that it owes this sum to Trinity Controls and should be reimbursed by Global accordingly.  However, the document suggests that Crown does not owe Trinity Controls any sum of money.  A second document entitled "Vendor QuickReport" dated August 5, 2009, lists all amounts billed to Crown by Trinity Controls for the period of June 29, 2007, through December 30, 2007.  This document shows a positive value of $494,623.72 labeled as a credit.  Joint Statement, Exhibit M, Declaration of Eric Shumway dated August 26, 2009 at pgs. 7-8.  Crown has not responded to Global's contentions that these documents were not previously produced.

1   Defendant's Exhibits.  (Doc. 105). At the hearing on August 21, 2009, Crown argued that the CD

2   and the external hard drive contain the same information, however other than making this blanket

3   assertion, Crown has not produced any evidence to support this contention.   Further, Mr. Wilmer

4   testified at his deposition that he provided his laptop computer to Crown approximately one (1)

5   month ago, yet Crown only made the computer available for the first time on August 26, 2009.

6   Joint Statement, Exhibit L, Deposition Transcript of Brad Wilmer, Tr. 32:19-34:25.

7        Finally, it appears that more information regarding emails may have existed or currently

8   exists.  For example, during a recent deposition on July 27, 2009, Rene Holbert, Crown's

9   Mechanical Supervisor on the Projects, indicated that Crown provided him with a computer. He

10  used the computer to send hundreds of emails to people internally at Crown regarding the Project

11  and that he believes this computer still exists at Crown's primary office in California.  Joint

12  Statement, Exhibit H, Deposition Transcript of Rene Holbert, Tr. 110:13-116:8.  Global contends

13  that the majority of the emails have never been produced and Crown has not submitted any

14  evidence to the contrary.

15       Crown argues that it has complied with the Request for Production because it has given

16  Global numerous documents and made their computers and servers available to Global.  Further,

17  Crown contends that an examination of the servers would have revealed all of the information

18  Global is seeking.  The Court is unpersuaded by this argument since there is one hard-drive, a

19  laptop computer, one page of a daily planner, as well as at least two relevant documents that were

20  produced after the filing of this motion.  Further, there has been inconsistent testimony by

21  Crown's own employees regarding whether Crown used a server, for what purposes, and how

22  long the information was preserved.  Joint Statement, Exhibit L, Deposition Transcript of Bart

23  Wood, Tr. 121: 7-23;  Joint Statement, Exhibit L, Deposition Transcript of Brad Wilmer, Tr.

24  52:10-53:19.

25       The Court finds that Crown did not timely comply with its discovery obligations resulting

26  in the need for Global to file this motion.  Therefore, Global's Motion to Compel is granted in

27

28                                              10

1    part.  Crown shall provide responses to Global's Request for Production of Documents Number 7

2    and shall produce all of its internal documents, including internal emails, all CDs, and other

3    devices used to store any documents or other data, etc., relating to the Projects.  Additionally,

4    Crown shall identify which computers were used on the Projects, whether they still exist, as well

5    as identify what information was downloaded from each computer.  Crown shall also identify any

6    computer, hard-drive, or other device used to store electronic information regarding these two

7    projects which no longer exists or can not be located, and any stored information that was either

8    not  downloaded or not preserved.  Finally, Crown shall provide Global with information

9    regarding how data was downloaded onto the external hard-drive which Crown recently

10   produced to Global, as well as describe Crown's decision making process used to determine what

11   information should be downloaded.

12       4.  Discovery Sanctions

13       The court on motion may order sanctions "[i]f a party, after being properly served with a

14   request for inspection under Rule 34, fails to serve its answers, objections or written response."

15   Fed. R. Civ. P. 37(d)(1)(A)(ii).  "A failure described in Rule 37(d)(1)(A) is not excused on the

16   ground that the discovery sought was objectionable, unless the party failing to act has a pending

17   motion for a  protective order under Rule 26(c)." Fed. R.Civ.P. 37(d)(2).  If a *party* fails to

18   respond to discovery, sanctions may be imposed even in the absence of a prior court order.

19   Fed.R.Civ. P. 37(d).   A party failing to act, or the attorney advising that party, or both shall pay

20   the reasonable expenses, including attorney's fees, caused by the failure unless the failure was

21   substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P.

22   37(d)(3).  An award of expenses does not require a showing of wilfulness or improper intent;

23   rather the standard is whether there was a substantial justification for the losing party's conduct.

24   Id. Even without a prior discovery order, discovery misconduct may be punished under the

25   Court's "inherent powers" to manage its affairs.  *Uniguard Security Ins. Co. v. Lakwork Eng.*

26   *Mfg Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).  Additionally, under Federal Rules of Civil

27

28                                                    11

1  Procedure 37(a)(5), if a motion to compel is granted, or if the requested discovery is provided

2  after the motion was filed, the court must require the party whose conduct necessitated the filing

3  of the motion to pay reasonable expenses including attorney's fees. Fed. R. Civ. P. Rule 37(a)(5).

4   However, the Court must not order payment if the nondisclosure was substantially justified or if

5  other circumstances make an award unjust. *Id.*

6         Global seeks sanctions in the amount of $57,453.50 to cover the costs of bringing the

7  instant Motion to Compel, including conducting meet and confer conferences, as well as

8  researching and drafting the pleadings.  Additionally, Global argues that Crown failed in its duty

9  to preserve evidence and make it available to Global, and that Crown engaged in a deliberate and

10 intentional scheme to withhold or destroy evidence.   As a result, Global is seeking terminating

11 sanctions for spoliation and other discovery abuses including an entry of default judgment and

12 dismissal of Crown's Cross-Claims, or evidentiary sanctions to include an adverse evidentiary

13 jury instruction at trial.

14        As a preliminary matter, the Court notes that Global's requests for default judgment,

15 dismissal of Crown's Cross-Claims, and evidentiary sanctions are dispositive motions or relate to

16 evidentiary issues that will effect the trial.  Additionally, some of the evidence regarding

17 spoliation involves testimony given during a hearing with Judge Wanger.  Joint Statement,

18 Exhibit G, Testimony of Mr. Tripp, July 24, 2009, Hearing Transcript, Tr. 13: 12-18.   As such, it

19 is more appropriate that these matters be considered by the district court judge.  Accordingly, this

20 Court defers ruling on the spoliation issues at this time.  If Global wishes to pursue the remedies

21 listed above, or additional monetary sanctions related to the spoliation issues, it shall properly

22 notice the motion and place the matter on Judge Wanger's calendar so that those matters can be

23 resolved.

24        This Court will address Global's request for attorney's fees only as it relates to the filing

25 of this Motion to Compel.  Generally the Ninth Circuit has adopted a lodestar approach for

26 assessing the amount of reasonable attorney's fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1397

27

28                                              12

1   (9th Cir.1993).   Here, however, the Court is assessing attorneys' fees against Crown pursuant to

2   Federal Rules of Civil Procedure 37(a)(5) and 37(d) which requires a party to pay attorney's fees

3   caused by a failure to comply unless the failure was substantially justified or other circumstances

4   make an award of expenses unjust   Accordingly, the Court looks to the lodestar factors only for

5   guidance when deciding the amount of attorneys' fees arising from Plaintiff's Motion to Compel.

6        The party seeking the award of fees must submit evidence to support the number of hours

7   worked and the rates claimed. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th

8   Cir.2000). "A district court should exclude from the lodestar amount hours that are not

9   reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.' " "*Id.*

10  (citation omitted). To determine the lodestar, the court may consider the following factors: (1)

11  the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill

12  requisite to perform the legal service properly; (4) the preclusion of other employment by the

13  attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or

14  contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount

15  involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10)

16  the undesirability of the case; (11) the nature and length of the professional relationship with the

17  client; and (12) awards in similar cases. *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th

18  Cir.1975).

19       Here, Crown's failures and action are not substantially justified and an award of

20  attorneys' fees is appropriate.  The Court has examined the declarations and supporting

21  documents submitted by counsel, as well as the factors above.   Joint Statement, Exhibits N-O.

22  The requested amount of $57,453.50 would be unjust because it is excessive and unreasonable.

23  In calculating the requested amount, Global lists the following billable hours: 37.4 hours by Mr.

24  Gray, Esq., at a billing rate of $425.00 per hour; 76.6 hours by Mr. Ostroff, Esq., at a billing rate

25  of $290.00; 1.6 hours by John Lynch, Esq., at a billing of $ 390.00; 25.3 hours by Ms. Hebesha,

26  Esq., at a billing rate of $205.00 per hour; and 17.9 hours by Ms. Kreutter, Paralegal, at a rate of

27

28                                                  13

1    $160.00 per hour.  Joint Statement, Exhibit N at Exhibit A.  Counsel also represented that it

2    anticipated additional fees in excess of $12,000 not included in the amounts listed above.  Joint

3    Statement, Exhibit N at pg. 4; Joint Statement, Exhibit O at pg. 2.

4           A review of the billing statements reveals that several entries relate to the filing of a prior

5    motion to compel heard by Judge Wanger, work completed on a motion to withdraw as counsel,

6    and preparation for the settlement conference.  Joint Statement, Exhibit N at Exhibit A.

7    Additionally, some of the filings in this case were redundant and the court vacated the second

8    hearing on the motion resulting in less billable hours.  The Court has adjusted the requested

9    amounts as these numbers reflect a more reasonable and just assessment given the circumstances

10   of this motion : 6 hours by Mr. Gray at a billing rate of $425.00 totaling $2,550.00; 35 hours by

11   Mr. Ostroff at a billing rate of $290 per hour totaling $10,150.00; 15 hours by Ms. Hebesha at a

12   billing rate of $205.00 per hour totaling $3,075.00; and 10 hours by Ms. Kretter at a billing rate

13   of $160.00 totaling $1,600.00. Accordingly, Global shall be awarded $17,375.00 in attorneys'

14   fees.

## IV.  Conclusion

16          Based on the foregoing, Plaintiff's Motion to Compel is GRANTED IN PART as

17   follows:

18          1) Crown shall provide responses to Global's Request for Production of Documents

19   Number 7 including producing all of its internal documents, including internal emails, all CDs,

20   and other devices used to store any documents or other data, etc., relating to the Projects;

21          2)  Crown shall identify which computers were used on the Projects, whether they still

22   exist, as well as identify what information was downloaded from each computer;

23          3) Crown shall also identify any computer, hard-drive, or other device used to store

24   electronic information regarding these two projects which either no longer exists or can not be

25   located, and any stored information that was either not downloaded or not preserved;

26          4)  Crown shall provide Global with information reagarding how data was downloaded

27

28                                                    14

onto the external hard-drive that Crown recently produced to Global, as well as describe the decision making process Crown used in determining what information should be downloaded;

    5) All items listed above shall be produced within five days of the date of this order; and

    6) Attorneys' fees are awarded in the amount of $17,375.00.

   IT IS SO ORDERED.

**Dated:**   **September 14, 2009**          **/s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE